**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America | No. CR-12-08142-PCT-NVW |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Ibrahim Fahab Bare | |
| Defendant. | |

Before the Court is the United States' Motion In Limine to Preclude Defenses (Doc. 47), Defendant's Amended Response and Supplement to Amended Response, and the Amended Reply. For the following reasons, the Motion will be granted.

## I. Legal Standard

A defendant who is charged with prohibited possession of a firearm in violation of 18 U.S.C. § 922(g)(1) may assert a defense of justification. *United States v. Gomez*, 92 F.3d 770, 775 (9th Cir. 1996). In cases that allege violation of § 922(g)(1), justification is an affirmative defense, such that "the burden of proving the defense of justification by a preponderance of the evidence [is] on the defendant." *United States v. Beasley*, 346 F.3d 930, 935 (9th Cir. 2003). This rule applies to all justification defenses; whether the defense is styled as "justification," "necessity," "duress," or "self-defense" is immaterial. *Id*. at 934-35. In order to meet his burden of proving a justification defense to the charge of felon in possession of a firearm, a defendant must establish four elements: (1) he was under unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative; (4) there was a direct casual

relationship between the criminal action and the avoidance of the threatened harm. *United States v. Wofford*, 122 F.3d 787, 790 (9th Cir. 1997).

A defendant is not, however, "entitled to present a duress defense to the jury unless the defendant has made a prima facie showing of duress in a pre-trial offer of proof." *United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008). In order to make such a prima facie showing, the defendant must present evidence that is sufficient as a matter of law to establish each of the four required elements of the defense in his pre-trial proffer. *Id*. Without an offer of proof sufficient to support those elements, evidence that would support a justification defense is irrelevant, and a district court may exclude both the defense and supporting evidence. *Id*.

A defendant has the right to assert the defense of justification at trial if there is any foundation in the evidence to support each of the elements, "even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Lemon*, 824 F.2d 763, 764 (9th Cir. 1987). As a result, the evidence in the defendant's pre-trial proffer must be viewed in the light most favorable to the defendant, and courts must review the evidence under the defendant's version of the facts. *Id*. at 764-65. "A mere scintilla of evidence supporting a defendant's theory, however, is not sufficient to warrant a defense instruction." *Wofford*, 122 F.3d at 789 (citation and internal quotation marks omitted).

**II. Facts**

The facts described here are compiled from Defendant's Response to the Motion In Limine (Docs. 57, 58), Reports of Investigation produced by the United States (Doc. 57-1), transcripts of interviews with witnesses to the events (Doc. 58-1), a transcript of an interview with the defendant's wife provided to the court, and the proffer of defense counsel at oral argument on this Motion. These facts are presented in the light most favorable to Defendant and as Defendant described them. On the night of April 9, 2012, at around 11:30 p.m., Defendant, Mr. Bare, awoke to the screams of his wife, Ms. Greyeyes. Ms. Greyeyes called out for Mr. Bare in response to a neighbor, Mr. Begay,

who was attempting to break into Ms. Greyeyes' home. Mr. Begay was very intoxicated that evening, and is a much larger man than Mr. Bare. Mr. Begay had asked to see Mr. Bare and quickly became irate when Ms. Greyeyes told him to come back in the morning. When Ms. Greyeyes tried to close the door, Mr. Begay put his foot inside the door and started to push against it, at which point Ms. Greyeyes called for Mr. Bare. Mr. Bare arrived, and Mr. Begay refused to leave. Ms. Greyeyes again went to the door and told Mr. Begay to go home. At some point, she was able to close the door with Mr. Begay outside. Mr. Begay then began to kick the door.

In response, Mr. Bare opened the door and confronted Mr. Begay. Mr. Begay threatened Mr. Bare, saying that Mr. Begay would come back to the house with accomplices and hurt Mr. Bare. Mr. Begay made clear that he was threatening Mr. Bare and his family, and told Mr. Bare that his family was "marked." During the confrontation, Mr. Begay actually called some of his friends in an attempt to get them to come to Ms. Greyeyes' home, though no one ever arrived. Mr. Begay stood outside the doorway of the home and called Mr. Bare, who was either inside or just outside the door at the time, a series of vile racial epithets. Mr. Begay also threatened to burn Ms. Greyeyes' house down. Mr. Bare and Ms. Greyeyes again went inside and closed the door, after which Mr. Begay began to kick at the house and tear at a drain pipe. Ms. Greyeyes went outside alone and told Mr. Begay to go home, at which point he seemed to calm down temporarily. But the confrontation continued when Mr. Bare came outside, as Mr. Begay yelled more racial epithets. Ms. Greyeyes worked to keep both men calm, telling each to go inside their respective homes. Throughout the altercation, Mr. Begay was unarmed.

At some point, Mr. Bare went back inside the house to retrieve a firearm that belonged to Ms. Greyeyes' nephew. Ms. Greyeyes was still outside with Mr. Begay when Mr. Bare came outside with the firearm. At some point, Mr. Begay ran toward Mr. Bare to attack him. When Mr. Begay was 5 to 10 feet away from Mr. Bare, Mr. Bare fired the gun he was holding into the air.

Neither Mr. Bare nor Ms. Greyeyes called the police at any time during these events. The police station is located about 30 minutes away from Ms. Greyeyes' home. After Mr. Bare fired the gun, Mr. Begay's sister called the police; the police responded more than 30 minutes after the altercation began. In his proffer, counsel for Defendant averred that Defendant would additionally testify that during the confrontation, Defendant was frightened that he would be killed or seriously injured, frightened that his wife would be assaulted and hurt, and frightened that his children were at risk.

**III. Analysis**

The question to be answered on this Motion is whether the evidence described above is sufficient as a matter of law to support the elements of the defense of justification. Since the evidence is insufficient as a matter of law, the defense of justification, and the evidence offered in support, will be excluded at trial.

For the first element of the defense, Defendant must demonstrate that he was under unlawful and present threat of death or serious bodily injury. The evidence that could support such a threat in this case was Mr. Begay's verbal threat to round up friends and attack Mr. Bare, and threat that Mr. Bare and his family were "marked." But to establish the first element of the justification defense, the threat to Mr. Bare or his family must be "present, immediate, or impending," *Vasquez-Landaver*, 527 F.3d at 802, such that there was "an imminent threat of attack." *United States v. Phillips*, 149 F.3d 1026, 1030 (9th Cir. 1998). Mr. Begay's threats to return to the house later and to harm Mr. Bare's family in the future were not present threats under that standard because they were not immediate or impending. The same is true of Mr. Begay's threat to burn the house down, as both Mr. Bare and Ms. Greyeyes knew he had no means of immediately carrying out that threat. Mr. Bare may have legitimately feared that Mr. Begay "would harm him or his family, but that is not enough. He did not show an immediate threat." *United States v. Becerra*, 922 F.2d 960, 962 (9th Cir. 1993).

Further, during the entire confrontation, Mr. Begay was unarmed, and never used, nor exhibited the use of, excessive or deadly force. As a result, there was no need for Mr.

Bare to arm himself at that moment even if he honestly believed that Mr. Begay might later return to harm Mr. Bare or his family. *See Lemon*, 824 F.2d at 765. And when Mr. Begay charged at Mr. Bare in a way that may have constituted a present threat, Mr. Bare was already in possession of the firearm. The threat of injury from Mr. Begay's charge therefore cannot be said to have prompted Mr. Bare to possess the firearm. There is thus no evidence in this case that Mr. Bare was under an immediate threat of harm.

Even if there were evidence of a present threat of death or serious bodily injury, Mr. Bare has not presented evidence that he did not recklessly place himself in a situation in which he would be forced to engage in criminal conduct, the second element of the defense. On two separate occasions during the confrontation, Mr. Bare and his wife were safely inside Ms. Greyeyes' home with the door closed and Mr. Begay outside. Mr. Bare went outside of the house to confront Mr. Begay rather than remaining safely inside the house and calling the police. By going outside to confront Mr. Begay, Mr. Bare recklessly placed himself in the very situation that he claims forced him to possess a firearm.

Mr. Bare's decision to leave his home to confront Mr. Begay also demonstrates that he failed to utilize a legal alternative, and so cannot establish the third element of the justification defense. In order to show that the he had no legal alternative to possessing a firearm, Mr. Bare must present evidence "that he actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefits of the alternative." *Lemon*, 824 F.2d at 765. The relevant alternative here was for Mr. Bare to call the police: "[o]ur cases uniformly require the defendant to seek aid from law enforcement before taking matters into his own hands." *Wofford*, 122 F.3d at 791. Mr. Bare did not call the police in this case, despite the opportunity to do so while he was safely inside Ms. Greyeyes' house. Mr. Bare argues that his failure to call the police is justified by the 30 minute distance to the nearest police station. The fact that it took officers a long time to respond to calls, he contends, left Mr. Bare without a reasonable legal alternative during the confrontation. But there is no evidence here of exigent

circumstances that would render that 30 minute wait time such an obstacle that seeking protection from law enforcement first would be futile or impossible. Because Mr. Bare did not call the police nor seek other forms of protection from Mr. Begay's threats, there is insufficient evidence as a matter of law to support the third element of the justification defense as well.

Finally, there is no direct causal relationship between Mr. Bare's possession of the firearm and the avoidance of the harm Mr. Begay threatened. Again, Mr. Bare was already in possession of the firearm when Mr. Begay charged at him such that the possession could not have been connected to avoiding that threat. Further, Mr. Bare retrieved the gun even after Mr. Begay had been shut out of the home, so that there is no connection between Mr. Begay's threatened break in and the possession. And possessing the gun during the confrontation is in no way connected to avoiding the threat of future harm from Mr. Begay and his friends returning to the house later to harm Mr. Bare and his family. As a result, Mr. Bare cannot demonstrate sufficient facts to meet the fourth element.

Because Mr. Bare has failed to establish a factual basis for any one of the four required elements of a justification defense, he has not made a prima facie showing for the defense. Without such a showing, Mr. Bare is not entitled to present a defense of justification at trial, and any evidence supporting such a defense will be excluded as irrelevant. *United States v. Moreno*, 102 F.3d 994, 995 (9th Cir. 1996).

IT IS THEREFORE ORDERED that the United States' Motion In Limine to Preclude Defenses (Doc. 47) is GRANTED.

IT IS FURTHER ORDERED that Defendant is precluded from presenting evidence for, or arguing in support of, an affirmative defense of justification at trial.

Dated this 28th day of November, 2012.

_____
Neil V. Wake
United States District Judge